IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER POINDEXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-327-WKW |
| | ) | [WO] |
| DEPARTMENT OF HUMAN | ) | |
| RESOURCES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This suit arises out of Plaintiff Jennifer Poindexter's resignation, which she argues was a constructive discharge. Plaintiff, a former employee of the Alabama Department of Human Resources ("DHR"), alleges that DHR, the Alabama State Personnel Board, and five of the agencies' current and former employees violated Plaintiff's constitutional right to procedural due process. She also brings a number of state law causes of action.

Before the court are Defendants' Motions for Summary Judgment. (Docs. # 26, 27.) Plaintiff responded in opposition (Doc. # 35), but only the DHR Defendants replied (Doc. # 36). Having considered the arguments of counsel and the relevant law, the court finds that Defendants' motions are due to be granted in part and denied in part.

## I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  It has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond

the pleadings – that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324.

## III. BACKGROUND

Plaintiff is a former employee of DHR who worked in the agency's Conecuh County office as a Financial Support Supervisor.  Her twenty-year career appears to have been uneventful until April 9, 2010.  That day, Defendants Kelly Lever, the Assistant Personnel Director for DHR, and Louis Holt, the then-Chief Investigator for DHR Internal Affairs, arrived in Conecuh County.  They handed Plaintiff a letter informing her that an administrative hearing would take place on April 30, 2010, to determine whether she violated agency rules regarding food stamps when she used her nephew's food stamp card.  The letter accused Plaintiff of "unauthorized use" of the card and identified eight dates and locations where Plaintiff allegedly used the card, outside of the presence of her nephew or another authorized user.  (Doc. # 1, Ex. 1.) The letter informed Plaintiff that if evidence at the hearing showed she had impermissibly used the card, she could face "disciplinary actions of increasing severity," ranging from suspension to termination.  (Doc. # 1, Ex. 1.)

Defendants Holt, Lever, and Rosa Mickles – the then-head of the Conecuh County DHR office – were the bearers of this bad news, and Holt recorded part of the conversation.   They informed Plaintiff she could resign to avoid a potential

3

termination.   Lever told her three times that the evidence against her was "overwhelming" and that the agency would "seek termination of [her] employment." (Doc. # 26-7 at 99, 103.)  Lever said Plaintiff's conduct was "a very, very severe act of fraud."  (Doc. # 26-7 at 99.)  Lever opined that in cases like Plaintiff's, it was "usually best" for the employee to resign, and said that Defendant Mickles was prepared to accept Plaintiff's resignation "in lieu of going to a hearing."  (Doc. # 26-7 at 99.)  Ultimately, Lever told Plaintiff, it was "[her] decision."  (Doc. # 26-7 at 99.) Defendant Holt told Plaintiff he would not have been there if the agency did not "have a serious case."  (Doc. # 26-7 at 101.)

Plaintiff asked whether she had to make her decision immediately.   She specifically asked whether she could consult an attorney first.  (Doc. # 26-7 at 103.) Lever told her that though she did not "have to say at this very moment," Plaintiff would need to speak with an attorney "as soon as possible to turn in [her] resignation" if she intended to resign.  (Doc. # 26-7 at 103.)  Though Lever insisted she was not forcing Plaintiff to give an answer and only "trying to get a general idea" of Plaintiff's thoughts (Doc. # 26-7 at 104), moments earlier, Lever had said, "[I]f you do not resign, you will be relieved of your duties. . . .  [Y]ou will basically be staring at four walls until the date of the hearing."  (Doc. # 26-7 at 103.)  She also told Plaintiff she would have to "turn over all [her] keys to . . . the building [and] anything in [her]

4

office." (Doc. # 26-7 at 104.)  When Plaintiff asked if she needed to write a letter immediately if she decided to resign, Lever told her that would be best.

Plaintiff then asked if she could make a phone call, and Defendants allowed her to call her husband.  (Doc. # 26-7 at 106.)  When the meeting reconvened after Plaintiff's call, Holt forgot to resume recording.  (Doc. # 26-4 at 2.)  "Lever and Holt, with the tape recorder turned off," then threatened Plaintiff with criminal prosecution if she did not resign.  (Doc. # 35-1 ¶ 11.)  Defendants dispute that allegation, but they admit Holt earlier told Plaintiff that receiving food stamp benefits to which one is not entitled "constitutes a crime."  (Doc. # 26-7 at 103.)  In any case, after she called her husband, Plaintiff penned a handwritten letter that read, "I resign my position as Financial Support Supervisor effective today April 09, 2010."  (Doc. # 1-2.)  She included those words on Defendants' instruction and signed the letter before her husband arrived.  (Doc. # 35-1 ¶¶ 11–13.)  Mickles immediately accepted Plaintiff's resignation, signing and so indicating on the bottom of the letter.  (Doc. # 1-2.)

When her husband arrived, Plaintiff attempted to withdraw her resignation, but Defendants told her it was too late.  Her resignation was effective.  The hearing scheduled for April 30, 2010, never occurred.

Another hearing did occur, however.  In September 2010, Plaintiff made a claim for unemployment benefits.  To determine her eligibility, the Hearing and Appeals

5

Division of the State Department of Industrial Relations held an evidentiary hearing. Plaintiff and DHR were the parties to that action, and both were represented by counsel. The Hearing Officer concluded that Plaintiff "did not resign her position voluntarily," but, instead, that Defendants "compelled [her] into submitting her resignation." (Doc. # 1-6 at 2.) The Officer found that Defendants "had already decided to terminate the claimant," and Defendants' statements when they spoke to her "could be reasonably interpreted to mean that the administrative hearing would be futile." (Doc. # 1-6 at 2.) Thus, Plaintiff was eligible for unemployment compensation benefits.

Plaintiff brought this suit, accusing seven Defendants of eight causes of action – three claims under 42 U.S.C. § 1983 and five under state law. Plaintiff has since abandoned three of her state law claims;[1] she maintains her claims for violations of the Alabama Constitution (Count IV) and for the tort of misrepresentation (Count VI).

## IV.  DISCUSSION

### A.    <u>The State and its agencies are immune from suit.</u>

The Eleventh Amendment bars federal courts from entertaining suits brought against unconsenting states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

---

[1] Plaintiff abandoned her claims for interference with business relations (Count V), deception (Count VII), and wantonness (Count VIII). (Doc. # 35 at 33.) Accordingly, summary judgment is due on those claims.

89, 100 (1984); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989) (holding that "a State is not a 'person' within the meaning of § 1983"). The Eleventh Amendment bars suits against states – absent abrogation of immunity – regardless of the relief sought or the claims asserted. *Pennhurst*, 465 U.S. at 101–02.

Both the State Personnel Board and DHR are state agencies, Ala. Code §§ 36-26-4, 38-2-8, and Alabama has preserved its immunity. Ala. Const. Art. 1, § 14. Accordingly, Plaintiffs' claims against DHR and the State Personnel Board are due to be dismissed for want of jurisdiction. *See McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) ("[F]ederal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment.").

**B.    Count I states no § 1983 claim.**

Plaintiff brings three counts under 42 U.S.C. § 1983. In the first, she seeks a writ to compel payment "according to her contract." (Doc. # 1 ¶ 28.) The essence of this claim is that Plaintiff's resignation was not effective, and thus she is still a DHR employee. Accordingly, Plaintiff argues, she is entitled to payment "as required by law." (Doc. # 1 ¶ 30; Doc. # 35 at 26–27.) Assuming everything Plaintiff says is true, the facts might give rise to a breach of contract claim, but not a constitutional claim. 42 U.S.C. § 1983 (providing a private right of action against persons who, under color

of law, deprive another of "any rights, privileges, or immunities secured by the Constitution"). Thus, summary judgment is due on Count I.[2]

## C.   Plaintiff's procedural due process claim survives summary judgment.

In Counts II and III, Plaintiff alleges Defendants violated her constitutionally secured right to procedural due process when they terminated her employment without a hearing. The counts rest on the same factual allegations but differ in the relief sought and the Defendants named. Count II names Mickles, Voncile Jackson, and Jackie Graham, all in their official capacities,[3] and seeks injunctive relief. Count III names Lever and Holt in their individual capacities and seeks money damages. Both counts allege that Plaintiff's resignation was an involuntary constructive discharge, and Defendants, therefore, terminated her employment without notice and an opportunity to be heard.

A § 1983 claim for deprivation of procedural due process has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Thus, the Due Process Clause protects one's job only

---

[2] Count I suffers from an additional infirmity. Plaintiff names only the State Personnel Board as a Defendant, and, as set out above in Part IV.A., the state and its agencies are immune from suit.

[3] It also names DHR and the State Personnel Board, but, as discussed above, the Eleventh Amendment bars those claims. *Supra* Part IV.A.

where one has a property right in that job.  *Cleveland Bd. of Educ. v. Loudermill*, 470

U.S. 532, 541 (1985).  Defendants do not dispute that Plaintiff was a non-probationary

employee in Alabama's classified service and, therefore, had a property interest in her

position.  *See Ex parte Moulton*, ___ So. 3d ___, 2013 WL 285726, at *11–12 (Ala.

2013) (holding that the federal Due Process Clause protects a state employee who,

under state law, has "a legitimate claim of entitlement" to state employment) (quoting

*Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  If, however, Plaintiff resigned

voluntarily, she relinquished that property interest, and the Due Process Clause owes

her no protection.  *Hargray v. City of Hallandale*, 57 F.3d 1560, 1567 (11th Cir.

1995).

### 1.    Collateral Estoppel

As a preliminary matter, the court will address Plaintiff's invocation of the

doctrine of collateral estoppel.  Plaintiff argues the court should give preclusive effect

to the determination of the State Department of Industrial Relations that Plaintiff did

not resign voluntarily.  Plaintiff seeks to use the Hearing Officer's determination that

her resignation was involuntary offensively to prevent Defendants from arguing that

she relinquished her property interest in her employment and thereby forfeited her

procedural due process rights.

The court need not resolve the question of collateral estoppel now.  Plaintiff has not moved for summary judgment on this or any other issue, and whether Defendants are collaterally estopped from arguing Plaintiff resigned voluntarily, genuine issues of material fact prevent summary judgment in their favor, as set out below.  Plaintiff's argument regarding collateral estoppel is a question of law better left for a motion *in limine*.[4]

### 2.    *Constructive Discharge*

The law presumes that employee resignations are voluntary, and the employee claiming constructive discharge must overcome that presumption.  *Hargray*, 57 F.3d

---

[4] A brief primer on the relevant law follows, and any motion *in limine* should specifically apply the elements of collateral estoppel to the facts.

When litigants ask a federal court exercising federal question jurisdiction to give preclusive effect to a state judgment, the federal court must apply "the *res judicata* principles of the law of the state whose decision" would bar further litigation.  *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006) (quoting *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985).  Thus, Alabama law governs.

In Alabama, collateral estoppel applies with equal force to all issues "judicially determined by competent authority," whether those determinations are actually judicial or are "quasi-judicial acts of public, executive, or administrative officers or boards acting within their jurisdiction."  *Chapman Nursing Home, Inc. v. McDonald*, 985 So. 2d 914, 920 (Ala. 2007). Collateral estoppel applies to an issue raised in an administrative proceeding when:

> (1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Ex parte Buffalo Rock Co.*, 941 So. 2d 273, 277 (Ala. 2006) (internal quotations omitted). Alabama has recognized offensive collateral estoppel, at least outside the administrative-finding context, but has continued to insist on the mutuality requirement–"the requirement that the parties in both actions are the same."  *Ex parte Flexible Prods. Co.*, 915 So. 2d 34, 45 (Ala. 2005).

at 1568. But "there are two situations in which an employee's resignation will be deemed involuntary, and thus a deprivation of due process: (1) where the employer forces the resignation by coercion or duress; or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee." *Id.* (internal citations omitted). Whether coercion or misrepresentation is present is a legal question determined by the court. *Id.* at 1567 n.6. In both cases, the court conducts an objective inquiry; it asks whether the resignation was objectively a product of free will, not whether the employee perceived her only option to be resignation or whether the employer intended to mislead the employee. *Id.* at 1568, 1570. But the facts must be established before addressing the question of law.

The coercion or duress theory asks whether, "under the totality of the circumstances, the employer's conduct . . . deprived the employee of free will in choosing to resign." *Id.* at 1568. The Eleventh Circuit has identified five factors helpful in this inquiry:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Id.* Applying these factors, the court cannot say, as a matter of law, that Plaintiff was not constructively discharged.[5]

As to at least one factor, disputed facts remain. Plaintiff avers that Defendants Lever and Holt told her that she would be "criminally prosecuted if [she] did not sign a letter of resignation." (Doc. # 35-1 ¶ 11.) Defendants deny this allegation. But it is undisputed that Lever said Plaintiff's conduct was "a very, very severe act of fraud" and that Holt told Plaintiff receiving food stamp benefits to which one is not entitled "constitutes a crime." (Doc. # 26-7 at 99, 103.)

As to the third, fourth, and fifth factors, Plaintiff has come forward with enough evidence to prevent judgment as a matter of law against her. When Plaintiff asked if she needed to make her decision immediately, Defendants answered that she needed to decide "as soon as possible." (Doc. # 26-7 at 103.) They told her that if she did not resign, she would spend the three weeks leading up to her hearing "staring at four walls," relieved of all her duties. (Doc. # 26-7 at 103.) Before Plaintiff had even declared her intention to resign, Lever told Plaintiff she would have to turn over the keys to the building and anything else in her office. (Doc. # 26-7 at 104.)

---

[5] Only Defendants have moved for summary judgment, so the court need not consider the legal question of whether, based on the undisputed facts, Defendants *did* constructively discharge Plaintiff.

When Plaintiff asked specifically if she could speak with an "attorney first and then decide" whether to resign, Lever told her that she could speak with an attorney. (Doc. # 26-7 at 103.)  But in virtually the same breath, Lever emphasized that the evidence against Plaintiff was "overwhelming" and that Plaintiff would need to consult with an attorney "as soon as possible" and let her supervisor, Mickles, know that she was doing so.  (Doc. # 26-7 at 103.)  When Plaintiff asked if she could make a phone call, Lever asked who she was calling, telling Plaintiff, "[Y]ou can't really discuss this much outside of work."  (Doc. # 26-7 at 106.)  Defendants did permit Plaintiff to call her husband, but Plaintiff did not receive the advice of counsel.  At best, that was her choice; at worst, it was the product of Defendants' pressure to decide immediately and not discuss the situation "outside of work."  (Doc. # 26-7 at 106.)

Factual questions also remain for the misrepresentation theory.  When an employee pleads constructive discharge arising from misrepresentation, the inquiry is whether the "employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation" induced the resignation.  *Hargray*, 57 F.3d at 1570.  "A misrepresentation may be material if it concerns an alternative to resignation, such as the possibility of criminal prosecution."  *Id.*  The inquiry is

objective; an employee need not show intentional deception on the part of the employer. *Id.*

Constructive discharge based on a misrepresentation theory would require that Defendants made an untrue statement of material fact, and that Plaintiff relied to her detriment on that untrue statement in deciding to resign. *Id.* Again, Plaintiff asserts that Lever and Holt "threatened [her] with criminal prosecution," (Doc. # 35-11 ¶ 2), an allegation that, as stated, Defendants deny. At this stage, the court must assume Defendants did make such a threat. Assuming – without deciding – that such a statement would be one of fact, the court cannot conclude as a matter of law that Plaintiff did not reasonably rely on that untrue statement in deciding to resign.

Genuine issues of material fact remain,[6] and construing the evidence in the light most favorable to Plaintiff prevents the court from making the factual findings necessary to sustain a legal determination in Defendants' favor on either the coercion or the misrepresentation theory.

---

[6] As stated above, whether Plaintiff's resignation was voluntary is a question of law to be determined by the court. A jury will, however, have to resolve the disputed issues of fact. This will require the use of a detailed special verdict form, where the jury makes findings of fact based on the *Hargray* factors. The court will then weigh the factors in light of the jury's findings of fact. The parties should be prepared, at the pretrial conference, to discuss this and other matters related to the role of the jury and the content of the special verdict form.

### 3.    *What process was due?*

Due process entitles a tenured employee, like Plaintiff, to "'oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story' before a state or state agency may terminate [her]." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (quoting *Loudermill*, 470 U.S. at 546).  An involuntary resignation brought on by duress or misrepresentation is "a deprivation of due process." *Hargray*, 57 F.3d at 1568; *see also Hughes v. Ala. Dep't of Pub. Safety*, 994 F. Supp. 1395, 1404 (M.D. Ala. 1998) (remarking that a constructively discharged employee has a § 1983 "claim for deprivation of a property interest in employment without due process").

Unlike a substantive due process violation, "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" *McKinney*, 20 F.3d at 1557 (quoting *Zinerman v. Burch*, 494 U.S. 113, 123 (1990)).  Defendants argue that there was adequate state process in the form of an appeal to the Alabama State Personnel Board such that even if Plaintiff had a property interest, she suffered no deprivation.  Plaintiff did attempt to appeal to the Alabama State Personnel Board, but the Board apparently denied her appeal.  (Doc. # 26 at 14, Doc. # 26-10.) Defendants argue Plaintiff should have appealed again.  (Doc. # 26 at 14.)  Their

argument insists on *exhaustion* of remedy rather than resting on the *existence* of an adequate state remedy.

The adequate-state-process rule is not an exhaustion requirement, but a matter of ripeness. *Id.* at 1560. If there is adequate state process, there is no deprivation. *Id.* The nature of constructive discharge is that there is no adequate pre- or post-deprivation process. The employee is forced to resign and is deprived of any opportunity to be heard. *See Enterprise Fire Fighters' Ass'n v. Watson*, 869 F. Supp. 1532, 1541 (S.D. Ala. 1994) ("By its very nature . . . when the violation of due process is the failure to provide a pretermination hearing, the violation cannot be cured subsequent to termination."). If an employee can prove constructive discharge, she can also prove that the due process violation is complete; under such circumstances, the state will have already failed to provide the constitutional minimum of notice and an opportunity to be heard. *McKinney*, 20 F.3d at 1561. Thus, whether Plaintiff exhausted the Personnel Board's appellate process – or appealed to the Board at all – is of no moment. Plaintiff's procedural due process claim survives.

### 4.     *Qualified Immunity for Individual Capacity Claims*

Defendants Holt and Lever argue that even if Plaintiff's resignation was involuntary, they are entitled to qualified immunity from claims against them in their individual capacities. Qualified immunity involves a two-step inquiry that first asks

"whether the defendant government official was performing a discretionary function" when the allegedly wrongful acts occurred.  *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).  Indisputably, the actions of Lever and Holt in their conversation with Plaintiff were "undertaken pursuant to the performance of [their] duties and within the scope of [their] authority" as senior DHR employees.  *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotations omitted).

The next step of the qualified immunity inquiry is actually two steps.  It asks whether the defendant violated a constitutional right and whether the "right was clearly established at the time of the alleged violation."  *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (internal citations omitted).  Lever and Holt are not entitled to qualified immunity at this stage because a material factual dispute remains about whether Plaintiff's constitutional right to procedural due process was violated.  Moreover – based on *Hargray* – if Plaintiff's allegations prove true, it should have been clear to Lever and Holt that their conduct was unlawful; thus, Plaintiff's constitutional right was clearly established.  *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (holding that "[t]he relevant, dispositive inquiry . . . is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful").

17

As discussed above, Lever and Holt at least raised the specter of criminal prosecution by telling Plaintiff she had committed "a very, very severe act of fraud" and that her conduct "constitute[d] a crime."  (Doc. # 26-7 at 99, 103.)  A resignation borne of a choice "'between comparably unpleasant alternatives'" is not necessarily one "'induced by duress or coercion.'"  *Hargray*, 57 F.3d at 1568 (quoting *Stone v. Univ. of Md. Med.  Sys., Corp.*, 855 F.2d 167, 173 (4th Cir. 1988)).  "Specifically, resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges."  *Id.*  But an exception to this rule exists "where the employer actually lacked good cause to believe" criminal charges could be brought.  *Id.*  Thus, it was clearly established in April 2010 that threatening a criminal prosecution to induce a resignation – and actually inducing that resignation – when there is not good cause to believe grounds for a criminal prosecution exists amounted to a procedural due process violation.  *Id.* at 1568, 1570–71.

There is a genuine dispute of material fact as to whether grounds for criminal charges existed.  No party has identified the substantive crime Plaintiff allegedly committed; Defendant Holt simply stated in his deposition, "The law's on the book." (Doc. # 35-9 at 22.)  Further, Defendant Holt admitted in his deposition that he had no intention of referring Plaintiff to any prosecutorial authorities.  (Doc. # 35-9 at 11–12.)  Construing Holt's deposition, the transcript of the April 9 conversation, and

the inferences therefrom in the light most favorable to Plaintiff, Defendants told Plaintiff she would be prosecuted though they knew or reasonably should have known there was not good cause to substantiate charges against her. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (requiring courts considering motions for summary judgment to construe all facts and draw all reasonable inferences in favor of the non-moving party). If Plaintiff can prove those facts at trial, then Defendants violated her clearly established right to procedural due process. *See Hargray*, 57 F.3d at 1571 ("[T]he question is whether the police knew, or reasonably should have known, that charges of grand theft could not be substantiated against Hargray."). Accordingly, Defendants are not entitled to qualified immunity at this time.

### 5. *Relief Sought for Official Capacity Claims*

Official-capacity suits are equivalent to suits against the state and thus barred by the Eleventh Amendment, except when they seek prospective injunctive relief. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (citing generally *Ex parte Young*, 209 U.S. 123 (1908)). The rule of *Ex parte Young* makes available this prospective injunctive relief from violations of federal law by state officials, notwithstanding states' Eleventh Amendment immunity. In Count II, Plaintiff seeks payment "according to the terms of the contract for past contractual work performed," a

declaration of her procedural due process rights, and reinstatement.  (Doc. # 1 ¶ 33.)
Only the reinstatement is prospective and equitable, and therefore Count II, which
alleges only official-capacity claims, survives only with regard to reinstatement.

To the extent Plaintiff seeks back pay from Defendants in their official
capacities, the Eleventh Amendment bars her claim.  An award of back pay is
"retroactive relief" and "would constitute the payment of money damages from the
state treasury in a suit against state officials." *Lussier v. Dugger*, 904 F.2d 661, 669
(11th Cir. 1990) (noting that absent abrogation, retroactive payment of salary and
benefits is not prospective injunctive relief and is therefore barred by the Eleventh
Amendment); *see also Cobb v. Alabama*, 10-CV-502-MHT, 2011 WL 3666696, at *3
(M.D. Ala. Aug. 22, 2011) (refusing an award of back pay on an official capacity
claim), *Earl v. Dupree*, 98-0898 CB-L, 2001 WL 36152178, *2 (S.D. Ala. Feb. 21,
2001) (same).  *But see Enterprise Fire Fighters' Ass'n*, 869 F. Supp. at 1542
(awarding back pay because the Eleventh Amendment does not protect municipalities,
only states).

Similarly, Plaintiff is not entitled to the declaratory relief she seeks.  Plaintiff
asks the court to find that Defendants violated her procedural due process rights.[7]  She

---

[7]  She also asks the court to declare that Defendants violated state law (Doc. # 1 ¶ 33), but
as set out in Part IV.B., violations of state law cannot serve as the basis of § 1983 claims.  If they
could, Plaintiff's claim would nonetheless fail because she seeks a retrospective declaration of
her rights.

does not allege an ongoing constitutional violation.  *Ex parte Young* does not permit a plaintiff "to adjudicate the legality of past conduct."  *Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).  Therefore, the court may not issue a declaratory judgment against Defendants in their official capacities declaring that their past actions violated Plaintiff's due process or other rights.  *See Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1258 (M.D. Ala. 2007) (finding that such declarations "serve no purpose other than to validate or authorize an award of monetary damages").

Reinstatement, however, is prospective injunctive relief and therefore permitted. *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995); *Cobb*, 2011 WL 3666696, at *3 ("Reinstatement is a quintessential form of prospective relief.").  It is, however, worth noting the limitations to reinstatement should Plaintiff succeed.  A ruling in her favor would not prevent Plaintiff's termination based on the same allegations set out in charge letter.  (Doc. # 1-1.)  It would only require that Plaintiff receive notice and an opportunity to be heard prior to her termination.  *Earl*, 2001 WL 36152178, at *1 (providing that reinstatement for a formal hearing was the proper injunctive remedy for a procedural due process violation).  Reinstatement would return Plaintiff to the status quo that existed the

morning of April 9, 2010, and leave Defendants to conduct a hearing if the agency still desired Plaintiff's termination.

Finally, there is some uncertainty regarding the official-capacity Defendants' abilities to secure the relief Plaintiff seeks, assuming a favorable verdict. The court is unable, on this record, to resolve as a matter of law the extent to which a judgment against these official-capacity Defendants would redress the injury Plaintiff alleges. The parties should take steps to help the court resolve these questions ahead of trial.[8]

## D.    Plaintiff's state law claims do not survive.

### 1.    *Official Capacity Claims*

In Count IV, Plaintiff argues that DHR, the State Personnel Board, and Defendants Mickles, Jackson, and Graham, all in their official capacities, denied her the procedural due process rights guaranteed under Alabama's constitution. (Doc. # 1 ¶¶ 37–39 (citing Ala. Const. Art. I, § 13).)   As discussed above, the Eleventh Amendment bars both federal and state law claims against states and state entities regardless of type of relief sought, with the exception of those claims that fall under

---

[8] Defendant Mickles is no longer the head of Conecuh County DHR (Doc. # 26-6 at 1), and thus, it appears she would have no authority to act in an official capacity to reinstate Plaintiff.  As of January 2013, Defendant Jackson is the interim director of Conecuh County DHR, and presumably, she would have such authority.  (Doc. # 26-5 at 1.)  It appears that Defendant Graham – the Director of the State Personnel Board – would have some authority to nullify Plaintiff's Form 11 currently on file, a form that effectively precludes Plaintiff from seeking future state employment, but it is unclear what role that would play in Plaintiff's reinstatement.  (Doc. # 28 at 1, Doc. # 28-9 at 1.)

the *Ex parte Young* fiction.  *Pennhurst*, 465 U.S. at 90; *supra* Parts IV.A., IV.C.5.
Thus, Plaintiff's claims against DHR and the State Personnel Board fail.  But
Plaintiff's claims against Mickles, Jackson, and Graham for violations of state law
also fail on the same grounds, because the state is the real party in interest.

Plaintiff agrees that Mickles, Jackson, and Graham are state officials.  (Doc. #
35 at 30.)  And thus, her official-capacity claims against those Defendants are claims
against the state, as the relief she seeks – reinstatement and back pay – would operate
against the state.  *See Pennhurst*, 465 U.S. at 101 (stating the "general rule" that
"relief sought nominally against an officer is in fact against the sovereign if the decree
would operate against the latter" (internal quotations omitted)).

The *Ex parte Young* exception does not apply where, as here, a plaintiff asks
a court to require state officials to abide by state law.  *Pennhurst*, 465 U.S. at 106.
The rule of *Ex parte Young* allows a federal court to enjoin state officials from
violating federal law under the premise that an officer whose conduct violated the
federal constitution is "stripped of his official or representative character and is
subjected to the consequences of his official conduct."  *Young*, 209 U.S. at 160.  That
premise is "necessary to permit the federal courts to vindicate federal rights and hold
state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*,
465 U.S. at 105 (quoting *Young*, 209 U.S. at 160).  But it is unnecessary "when a

plaintiff alleges that a state official has violated *state* law." *Id.* at 106. Principles of federalism and respect for state sovereignty require the federal court to refrain from hearing such claims. *Id.* Therefore, Count IV is due to be dismissed for want of jurisdiction. *McClendon*, 261 F.3d at 1256.

### 2. Misrepresentation

Count VI alleges that Defendants Lever and Holt, in their individual capacities, "intentionally misrepresented to third persons that [Plaintiff] had resigned, and those third persons relied on those representations, and as a consequence, [Plaintiff] has received no paycheck since the date the same defendants coerced her into signing a resignation." (Doc. # 1 ¶ 42.) But Plaintiff seems to attempt to amend her misrepresentation claim in her briefing on Defendants' motions for summary judgment. (Doc. # 35 at 33.) There, she calls Count VI a "claim for fraud" and argues that a jury could reasonably infer that "Defendants Lever and Holt willfully engaged in fraud and deceit by (a) misrepresenting the nature of their investigation; (b) misrepresenting the state of the evidence as 'overwhelming'; or (c) misrepresenting that they were or intended to engage in criminal prosecution when in fact they had no intention of any criminal prosecution." (Doc. # 35 at 33.)

Assuming Plaintiff did come forward with substantial evidence to support that more recently asserted position, she did not allege it in her complaint and cannot

amend her complaint in briefing.  *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*,

__ F.3d ____, 2013 WL 1501928, at *2 (11th Cir. April 15, 2013).  Her complaint did

not put Defendants on notice of that claim and did not satisfy the heightened pleading

standard that Federal Rule of Civil Procedure 9(b) demands for claims of fraud.  Nor

did Plaintiff produce substantial evidence to support her complaint's assertion that

Defendants Lever and Holt misrepresented that Plaintiff had resigned.  *See*

*Garczynski*, 573 F.3d at 1165 (requiring substantial evidence to defeat summary

judgment motion).  In fact, the undisputed evidence is that Plaintiff did resign, and

any representation by Defendants to that effect would have been true.  A involuntary

resignation that is the product of coercion, duress, or misrepresentation can violate an

employee's due process rights and entitle that employee to reinstatement, but it is also

effectual as a resignation.  Thus, Defendants are entitled to summary judgment on

Plaintiff's claim for misrepresentation.

## V.  CONCLUSION

Accordingly, it is ORDERED that:

1.  Plaintiff's claims against DHR and the Alabama State Personnel Board

    are DISMISSED for want of jurisdiction.

2.  Count IV is DISMISSED for want of jurisdiction.

3.       Defendants' motions (Docs. # 26, 27) are DENIED as to Count II's §

1983 claim for prospective injunctive relief and Count III.

4.       Defendants' motions are otherwise GRANTED.

In sum, only Counts II and III remain.  With respect to Count II, only the §

1983 procedural due process claim for reinstatement against Defendants Mickles,

Jackson, and Graham in their official capacities survives.  Count III's § 1983

procedural due process claim against Defendants Lever and Holt in their individual

capacities also survives.

DONE this 21st day of May, 2013.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE